All right, then we'll call the case justice. Ellis is all Internet is screwed up. So he's going to listen to it. Um, or if it comes on, he'll join us, but. His Internet is not working in their whole neighborhood. Oh, my goodness. So. All right, people versus Jovan battle 1, 210369. And you have before you Cynthia Cobb and myself, James Fitzgerald Smith, and as I say, David will listen to it later. If, um, although he said, he's read everything is just he can't can't voice his opinions at this time. So, and just understand. The way it works with us is we let the appellant go for 10 to 15 minutes. We don't usually interrupt, we just let you go. And at the end, then we ask questions. If you get on to something that we drastically either don't agree or something that's way off course, we may interrupt and ask some questions. Then we have the appellee and they have the same time frame and the same pattern with us asking questions after and then the closing. And with that, you may proceed. Can you hear me? Yes. Yeah. Okay. I had a notification for a minute that my microphone wasn't working. Thank you. Good morning and may it please the court. My name is Abigail Elmer and I represent Javon battle. I will be addressing the 1st, 2 issues today of the brief today. 1st, whether Mr battle understood the nature of the charges against him and was equivocal about his request to wait counsel and 2nd, whether the state proved Mr battle guilty by accountability beyond a reasonable doubt. Beginning with the 1st issue, the court aired and allowing Mr battle to represent himself. It was clear from the 1st court date through the end of trial that Mr battle did not understand the nature of the charges against him. Specifically, he consistently expressed to the court that he did not understand how he could be charged with 1st degree murder when he was not the shooter. The court was required by Supreme court rule 401 to ensure that Mr battle understood the nature of the charges against him. They failed to fulfill this duty when considering the presumption against the waiver of counsel, this court should find that battle did not unequivocally waive his right to counsel. Though battle at times would say that he understood the charges against him. It was clear. He was saying this because it's what the court wanted to hear. His questions to the court and his conduct at trial clearly demonstrated that he did not understand the principle of accountability, which formed the basis of the state's case against him. He demonstrated this misunderstanding in court before his request to waive counsel was even accepted on June 25th, 2019 on pages 76 and 77 of the record. He said this indictment is wrong. It make it's making me the shooter throughout pre trial battle continue to express this misunderstanding, telling the court things like, I don't understand why I'm being charged with aggravated discharge of a firearm. I never discharged a firearm at no point that the trial court explain accountability to battle or provide clarification to his clear misunderstanding to ensure he understood the nature of the charges against him. This misunderstanding affected how Mr battle conducted his defense at trial. He asked witnesses what he was on trial for if he was an accessory to 1st degree murder and if it was a crime to point at a car. In closing, he focused on his innocence based on not being the shooter never addressing the theory of accountability. He was charged under. He spent his trial seeking to establish that he never had a gun in his hand a fact that was never in dispute the mere fact that he never had a gun a gun did not amount to a valid defense of the charges. Mr battle may have had a basic understanding of the crimes themselves, such as what 1st degree murder was, but he did not understand how could he could even be charged when he did not fire a gun. Due to this lack of understanding, he clearly demonstrated to the court. He had no understanding of the nature of the charges as required by rule for a 1. Accountability is a core aspect of criminal liability, one for which a defendant is entitled to notice and an opportunity to defend himself that was decided by this court and people versus people's in 2015. The trial court does not need to explain to every single defendant representing themselves the theory of accountability. But such admonishments are necessary when they form the basis of the state's case and whereas here the defendant has expressed a clear misunderstanding of the charges. At times, understanding of the nature of the charges must require the court to do more than simply read the indictment to the defendant as was done here. As courts have found merely stating the charge and giving the defendant, a copy of the complaint is not always enough. When it became clear that battle had misapprehensions about the nature of the charges against him rule 1401 required the court to at least inquire further and correct the blatant misapprehension about the charges. Further, the court should not have allowed Mr battle to represent himself as his request to represent himself was equivocal. At arraignment and at many court dates after battle told the court, he wished to represent himself proprietor persona, rather than pro se. He believes that this proprietor persona was a separate constitutional right to be represented by a legal advisor, while maintaining control and the direction of the case. At no point to the trial court clarify that battle was not entitled to such existence assistance. In determining whether a defendant statement is clear and unequivocal this court must determine whether the defendant truly desires to represent himself and has definitively invoked his right to have self representation battle did not do that here. Regardless, to the extent that battle agreed to waive counsel, it was under his mistaken impression that he had the right to receive a legal advisor during the trial under the separate proprietor persona procedure. This can be seen through his statements, he may pre trial and at trial at the first court date, he said i'm trying to go proprietor persona, I was was not trying to go pro se. The Court at the time did not explain to battle that he had no right to receive standby counsel or that proprietor persona was not a separate option. Instead, the Court responded we're not there, yet the question is, do you want to represent yourself battle later said, I do not want to be forced into going pro se I said I want to go proprietor persona. And later, I would like to object to the for the proprietor persona, because I do feel that I need an advocate. He later told the Court, he believed, I also have a right to Sixth Amendment to the Sixth Amendment to have assisted counsel on the side of me, which is proper persona that was June 25 2019. When the Court told him, he did not have that right he responded, yes, I do, Your Honor i'm not going to argue with you, but, yes, I do, Your Honor at the end of the of this court date the Court allowed him to wait counsel. The Court never unequivocally explained to battle that there was no separate distinct proprietor persona form of representation. But battle was emphatic that he had the right to proceed with the legal advisor he only wanted to proceed pro se because he believed that was a separate decision from going proprietor persona. battle consistently expressed to the Court that he felt the Court forced him to go to proceed pro se when what he wanted to proceed was proprietor persona. In closing arguments, he continued to express this desire saying because guess what that man who said he is the law refused to give me assistance of counsel it's called proprietor persona. At times when the Court would ask him if he wanted to represent himself, he would say yes, because that was his preference over. Because he understood he misunderstood what his rights were, but then he would always go back and say again, he wanted proprietor persona he wanted an advocate by definition that is equivocal he was going back and forth. Between the two he was not unequivocal in his request to represent himself these comments about proprietor persona did not reflect his true desire to represent himself. And in light of the presumption against the waiver of counsel this Court should find that battle did not unequivocally rave his right to counsel. The state also failed to prove javon battle guilty beyond a reasonable doubt it did not show that battle was legally responsible for melanin Jackson shooting into the car. There was little dispute about the facts at trial, there was no dispute at all that javon battle was not the person who shot into the car. The state prosecuted him under a theory of accountability arguing, he was a backup to the shooter, however, evidence showed he had a minimal role in the encounter. He was a homeless by standard, he did not know the victims, he did not know the co defendants, he did not participate in or even witness the co defendants fight earlier in the night. Which was apparently a motivating factor for the shooting his only conduct is walking behind Jackson pointing a bottle before Jackson open fire at close range into a car without hesitation. In order to prove that defendants guilty by accountability, the state must prove that the defendant shared a criminal intent. Of the principal offender or there was a common criminal design with the principal defend offender they prove neither. The state's evidence did not prove that battle shared an intent or common and criminal design with Jackson to shoot into the car. As this court found and people versus Johnson in 2014 a defendant did not share a common. crim shared intent where the defendant was driving the car with a co defendant as passenger the co defendant saw this. The victim driving another vehicle and said he was the dude that shot me and told the defendant to chase him. The defendant did and stopped in front of it, the co defendant got out of the car pulled out a gun and fired several several shots at the victim. The co defendant got back in the car and the defendant drove away this court held that the evidence there failed to establish guilt by accountability. Because there was no evidence that the defendant was involved in any advanced planning or had prior intent to facilitate the shooting and the defendant did not even know that the co defendant did not even know the co defendant. I'm going to interrupt you, you are, you have failed to understand that Fernandez knocks out your argument about what a person has to know either prior to or in the course of because Fernandez goes the other way and says you don't need prior knowledge you just need to be involved in the event. Yes, that goes to Fernandez goes to the common criminal design element of proving accountability and it's the defense position that this is a distinguishable case from Fernandez as in that case, both the defendant and the co defendant, who was the one who shot the victim had the same intent to enter into the same crime and the shooting was then a result of that crime here, Mr battle did not have the same intent of. melanin Jackson Jackson clearly had the intent to shoot into the car from the beginning, he walked up and shot without provocation battle did not know that Jackson had a gun, as he told police directly after this shortly after the shooting. Nothing from Fernandez simply hold that you don't need to have prior knowledge or even know what the intent is, it is that the fact that you're you're aiding in furtherance of the offense doesn't isn't that what Fernandez stands for. In the situation there where they had the intent to enter into the same crime and then as a result of that crime. There was a shooting and that was furthered by the code of the defendants actions, but here, that is a missing element, where it was not the same intent. From the beginning of they did not have the same common criminal design javon battle thought that this was just going to be an altercation and maybe he would provide. backup in some sort of fight, but he did not know that Jackson had a gun and it would be more close to Fernandez if. Jackson had also intended just to enter into an altercation that had escalated into a shooting, but this is not a fight that escalated into a shooting Jackson from the very beginning, always had the intent clearly from the video to shoot into the car, this is much more like there's some conversation between the defendant and the co defendants prior to. them even walking to the car where the victims were what wasn't there some communication and then further were they not all three of them involved in the same gang. javon battle did tell officers that he. met the defendants about five minutes before the shooting took place in the lobby of the hotel that they had come down from. The women that were still in the hotel room testified that after Washington and Jackson left it was about five minutes until the shooting, and so we know that that timeframe. was about five or six minutes and battle did tell officers that he spoke with the men. And that they told him that they had been attacked earlier that night and that they were looking for the people who did it that's why javon battle thought he was gonna get into he was following them. Because he wanted to help protect them if they needed it in some sort of altercation, but he also told officers, he did not know that they. had a gun and what their intent was it wasn't the same common criminal design and, yes, battle did tell officers directly shortly after the shooting that he had some knowledge that they were in a gang. He didn't know them personally, though, this is just something he knew from the fact that he lived on the street and they also frequented the area, he still did not believe that they had a gun and that their intent was going to be to shoot into the car. So it's your position that battle actually had to know that the CO defendants were actually going to shoot in order to hold him accountable. Either that sorry either yes, that he had to know that they were going to shoot into the car or that he at least had the same. criminal design as Jackson as if him and Jackson had both intended to just enter into a physical altercation of some sort that then escalated into the shooting but here Jackson had never intended to enter into an altercation he just. intended Fernandes actually overrule a case people versus Phillips and then Phillips the Court held that an accountability cases the defendant is legally accountable only for the crimes he specifically intends that's Phillips didn't Fernandes overrule Phillips. Yes, it did that not to feature argument it's still the defense contention that the facts of. of Fernandes are not the same as the facts here, this is a different situation, where they did not have the same as in Phillips. Not necessarily either this is actually much more similar to people versus a strata which was also decided by this Court where. The defending the overruled either either expressly or implicitly by Fernandes is is a strata still good law. Yes, it has not been explicitly overturned. implicitly. I don't believe so no it's a different set of facts them Fernandes where in that one the defendant and his friends were riding in a car exchange opposing gun signs. And the defendant actually exited the car with a tire iron and struck the victim and this and the defendant chase the victim into a building and this Court still held that he did not. He was not accountable, as he only intended to intimidate the victim that's very similar to hear where. jovon battle did not have the same intent as Jackson. Here, I take you, can I take you back to your the first part of your argument justice Smith i'm sorry if i'm out of order, can I take you back to the first part of your argument Council the accountability piece. Where you indicate that Mr battle didn't understand accountability, yet the record would indicate in a motion to dismiss he had indicated that he had read the accountability statute. And that under that theory, as he read it near presence wasn't enough, so how, how can you legitimately argue that he didn't understand the accountability statute where you don't understand what he was being charged with. Isn't it more probable that he just didn't want to accept that as fact, in other words, he understood it, but he wasn't buying it and no matter how often. Judge Porter emphasized and explain clearly to him that if he didn't have to accept, but if it was proved, he was in big trouble, even to the point that he were he's I have to have the gun and shoot it and. Judge Porter explained that no accountability says you're responsible for it, not that you actually did the act and he just wouldn't accept that. isn't that true. He never accepted accountability. Even though order in my view Porter was his prepare a person, I mean this judge went so far beyond what a judge is supposed to do, I mean he not only explained it to him, he actually argued for him. i'm answering your questions and turn first to justice cobs this question he battled did address accountability and his motion to dismiss, but what he wrote in that motion was just a recitation of the statute, he did not show any understanding of. How deeply does the trial court have to go to decide whether or not you understood it deeply if you understood it enough to go to ILC yes. wouldn't you presume if you knew how to find the law as a pro se or without representation how much more deeply does the trial court have to go. You knew where to find the law, you knew what to read in the law, you actually said you shouldn't be held accountable, because you were merely present that would suggest that you had some understanding of what accountability meant. He copied and pasted that those parts he reading is not always understanding and he demonstrated through his words that he did not understand to justice Fitzgerald Smith's point as well. At times, this court did or the trial court sorry did explain to him or attempt to explain to him. That he what that he could be charged through accountability, but you have on battle clearly and consistently said he didn't understand. So under rule for a one it offer it doesn't give an exact list of things the Court needs to do instead. Providing leeway for the Court to do what it needs to be done needs to be done to reach this understanding, which here was more, but maybe there's also a possibility that the Court could do everything in its power to get you. What is everything in his power, besides being an advocate what what what is everything else in its power. Explaining it to to him more discussing it with him, but even if they did do things that we can't even think of to. figure that out, and he still didn't understand the Court should have been seeing that there was just no way he was going to reach that understanding deny his request to waive counsel and appoint him counsel. The right to waive counsel is not a inalienable unequivocal right, it is a conditioned right on the fact that he has to understand, and it has to be an unequivocal request here, he did not understand, and it wasn't unequivocal. So equating the lack of the lack of now or are you saying that equivocation is simply that he disagreed because more more than once judge Porter said. you're not going to have standby counsel if you want to represent yourself I don't recommend it it's not a smart move. And he just simply disagreed he disagreed with the judge that the judge shouldn't appoint stand by counsel, how is that equivocation, as opposed to I just disagree. I think it can be both and misunderstanding he misunderstood he said it many times throughout pre trial, he believed he had a specific Sixth Amendment right to this standby or assistance of counsel. In the way he was portraying it and he disagreed with the Court that whether this right existed or not, but he oftentimes also said, I do not want to go pro se he then at times would say yes. Sure, I'll go pro say he would go back and forth, this is, he was not equivocal or he was not unequivocal sorry by going back. By going back and forth between all of these different options, sometimes because of a misunderstanding and sometimes because of a disagreement, it just showed that he was not unequivocal with this decision and the Court should have reject based on that rejected his request to waive counsel. Well, in my view, the only thing that would have happened if the Court rejected would have been to appoint stand by counsel, which was what the Court clearly said, this is a simple uncomplicated case. i'm not going to give you stand by counsel after i've told you all of this, Mr battle, is it your position that you still do not want to be represented by counsel and Mr battle said I don't want to be represented by counsel. The Court could have told him. That he was rejecting that request for waiver of counsel and assigned a full public defender to represent him. doesn't he have a right not to be represented by public. He had that right if he was unequivocal in the request, and if he understood the charges against him it's not an inalienable right it's one that has conditions and here he didn't meet those conditions and the trial court should have. stepped in and said you don't meet rule 401 i'm not allowing you to waive counsel. I have no further questions justice Smith. Okay, and you may proceed. Thank you. Thank you. May it please the Court assistant states attorney Lisa and police appearing on behalf of the people of the state of Illinois. The trial court here properly exercises discretion in allowing defendant to proceed for a say where the record shows the knowingly and intelligently wave is right to counsel. pursuant to Supreme Court rule 401 a truck was obligated in part to ensure defendant understood the nature of the charges a term interpreted in some context to be synonymous with words like essence general character or kind. That is precisely what the Court did here when an insured defendant understood he was charged with murder aggravated battery aggravated discharge of a firearm. The trucker did so on two occasions, both on may 1 and June 25 when it ultimately accepted his waiver following defendants positive affirmations that he understood the charges. In fact, if anything, sees he had a basic understanding of the crimes, but only complains that the Court didn't do enough to make sure you understood the accountability theory. But defendant offers no legal basis requiring the Court here to have deviated from what is required and instead ensure he understood a technical legal theory of accountability. Which, as this Court is aware, is not a crime in and of itself, but a method through which a conviction can be reached. To be sure in accepting his waiver this Court was tasked to determine whether the defendants waiver was knowing and intelligently made. It did not require an inquiry into defendants ability to appropriately defend himself or his technical legal knowledge to require what defendant is suggesting would simply go beyond the purpose of the rule. Which is to ensure defendant is aware of his right to counsel and the consequences consequences are relinquishing that right and this Court should reject that argument. Nonetheless, a trial court here went beyond what was required and answer defendants questions sufficiently regarding accountability. On may 1 the Court explained quote the people are saying you are not charged with being the person that discharged the firearm, you are not charged with being the shooter that's what they are saying. Defendant responded all right again on June 25 the Court explains defendant you are charged because you're responsible for the acts of your co defendants that were committed in the course of the crime, this was also given before the courts acceptance of his waiver. This Court does was not required to further school defendant on a legal theory. Further it's clear by defendants insistence how much he wanted to represent himself had this Court done what defendant is asking. But did not allow defendant to proceed pro se because, instead, perhaps it determined he lacked a thorough understanding of accountability. and required him to represent be represented by the public defender who defendant adamantly stated, he wanted to fire. It is likely defendant would instead be claiming on appeal that he was improperly denied his right to proceed pro se. As a result, the trial court ensured this hearing was a fair process for defendant and properly determined he understood the nature of the charges. That being said, a closer look at the record shows defendant did have a sufficient understanding of accountability. This is shown by defendants pro se motion to dismiss charges as justice have referenced also through his cross examinations and both in his opening and closing arguments. Defendants apparent frustration with being charged under accountability and his belief that he shouldn't be accountable. As well as his choice of trial strategy should not be confused with defendant fundamentally misunderstanding the nature of the charges. For these reasons, the Court properly accepted that defendant understood the nature of the charges and there was no abuse of discretion. Defendants waiver was also clear and unequivocal despite repeated requests to represent himself with the aid of standby counsel or proprietary persona as defendant referred to it. He made it clear that with or without standby counsel, he wanted to represent himself. Defendant may have disagreed with the court's ruling denying counsel, but the record shows defendant repeatedly and unequivocally indicated he wished to represent himself, despite the court's ruling. On May 1 when asked if he wanted to represent himself after the court denied his request to have standby counsel defendant responded, I understand, Your Honor, for the record, I do understand, I like to go pro se. Again, on June 25 after the court reiterated, you will not be receiving standby counsel, the following conversation ensued. Court, after everything I've told you, you still want to represent yourself? Defendant, absolutely. I would like to fire this man. Court, I'm going to tell you my personal opinion. It's not a smart idea to do this, but if you want to do it, I'm going to let you. Defendant, thank you very much. Court, you still want to do it? Defendant, absolutely. This clearly constitute a clear and unequivocal request to proceed pro se, and while it is true that defendant later expressed he felt forced to go pro se, this court should not confuse his dissatisfaction with the ruling with a misunderstanding on his part regarding whether he would get standby counsel at a later time. While perhaps proceeding pro se without standby counsel was a second choice, that was ultimately his choice to make and which he made clear and unequivocally. For these reasons, the court did not abuse discretion. Further here, where defendant failed to preserve this issue, this court is asked to review under the plain air doctrine. However, where there is no air, there cannot be plain air, and this court should affirm defendant's convictions on issue one. People also proved defendant guilty beyond a reasonable doubt. There is no dispute here that Jackson shot into the vehicle containing all four victims, killing John Rivera and injuring Ruben Sierra. What is in dispute is whether defendant was accountable for that shooting. This court should affirm his convictions were the evidence viewed in the light most favorable to the people, certainly established accountability. Here to prove that defendant had the intent to promote or facilitate the crime, the people were required to prove either defendant share the criminal intent of the principle or there was a common criminal design. While not required, the people proved both here. He was proven guilty under the common criminal design rule where defendant and the shooter Jackson engaged in a plan to do an unlawful act, which was to seek revenge and harm the group of individuals that jumped co-defendants earlier that night. By defendant's own admission, he at the very least agreed to help co-defendants fight and was immersed in that criminal conduct leading up to and during the offense. As a result, defendant was guilty of Jackson's act of shooting those individuals in furtherance of that common design, regardless of whether defendant knew the shooting would occur or intended it to occur. The people went further, though, and though not necessary, also proved shared intent theory. As our Supreme Court has held the people versus Fernandez, there is absolutely no question that one can be held accountable for a crime other than the one that was planned or intended, provided it was committed in furtherance of the crime that was planned or intended. A common design here in this case is evident not only from defendant's own words in his ERI, but can be inferred from the circumstances of the crime. The evidence here showed defendant was present with co-defendants prior to the offense and was present during that planning. The evidence also showed defendant agreed to aid the co-defendants. Defendant stated in his ERI that he was going to help them fight. He explained that he knew co-defendants to be gangster disciples like himself and agreed to help them out, referring to a gangster disciple code. He also stated he was not going to let, quote, Mexicans jump on a black person or allow co-defendants to be outnumbered. Further, defendant was instrumental in carrying out their plan when he guided and led Jackson to the victims, whom defendant had passed earlier on the sidewalk and noticed were Hispanic, which was similar to the group that the co-defendants were looking for. Where Jackson otherwise did not know the victim's location, it is fair to say that but for defendant's actions, those innocent victims heading home after a night out with friends would not have been targeted. The pod video clearly depicts defendant and Jackson walking together toward the victim's parked car and even according to witness Sel McKeith, it looks like they were acting like they were on a mission. Also admitted in an ERI and depicted in the video, defendant repeatedly pointed out the vehicle with the beer bottle as they approached the car. There is also evidence that defendant coaxed Jackson. Based on eyewitness testimony of Hightower and Sel McKeith, it was reasonable for the jury to infer that right before Jackson fired into the car, defendant yelled, blow that, and then used an expletive. Defendant remained at the scene. During the shooting, watched Jackson repeatedly fire in the front seat and in the back seat of the car, did not try to stop him or render any aid to the victims. Defendant then fled, discarded the bottle in his hand, and did not report the shooting. Instead, he initially lied to the police shortly after the offense and only admitted to being present when he realized he was caught on video. Based on this evidence, time of design was proven and this court can affirm on that basis alone. However, based on the evidence, irrational attire facts certainly could also have determined that defendant and Jackson shared an intent to shoot. As just mentioned, there was evidence defendant verbally urged Jackson to shoot the victim, stating, blow that, and then use an expletive. There was evidence in defendant's own statement that he suspected the co-defendants were armed. And while the defendant attempted to minimize the situation in the statement by stating he only planned to assist with the fight, he also stated that when he was approached by the co-defendants, whom he knew to being in his gang, he presumed they were armed and was in fear that they would shoot him. The jury had their discretion to view these as self-minimizing statements that they were and instead by defendant shared the shooter's intent. And finally, defendant's positioning behind Jackson at the vehicle also supports the notion that he knew Jackson intended to fire in the vehicle. Where had defendant intended to only participate in a fight with Jackson being outnumbered by the four victims, surely defendant would have approached the car and defendant stayed back and out of the line of fire showing he knew about the shooting. Based on this evidence, the shared intent was also proven. For all of these reasons, a rational attire fact could have found defendant guilty beyond a reasonable doubt. And this question, I just want to make sure I understand one fact. Yes. And it goes to the accountability issue somewhat. Is it accurate to state that defendant stood by the end, I know the shooting wasn't prolonged, but it is accurate to say that the pod camera shows defendant simply standing by while the shots are being fired or does he flee as the shots are being fired? Is he standing there? Yeah, the duration of the shooting. Yeah, I would say that that is what it portrays. It portrays him standing there pointing the car and then defendant, co-defendant Jackson starts firing. But even a couple seconds, if you really look at the video, it looks like defendant starts backing up a little bit, like he knows what's coming, like there's going to be shots. I'm getting out of the way here. And he pretty much remained at that scene until the shots were finished and then he fled. Thank you. Yes. Are there any more questions? No, I'm sorry. I interrupted you. Oh, no. Oh, sorry. I'll finish up. I'm essentially done. I was just going to say for the reasons stated and for those in my brief, we would ask that this court affirm defendant's convictions. All right. Abigail, you may proceed. Thank you. I would like to address Javon Battles' limited participation in this crime in my rebuttal. The state addressed that argues that he led Jackson to the victims. There is absolutely no evidence of this at all. The victims that were able to testify did testify that they had passed battle earlier in the night and that they had made eye contact with him, but there was no nefarious intent described in this testimony. They seem to have made eye contact with many people who walk along the street, make eye contact with homeless people every day. There's no evidence. Battle at that time knew that Jackson or Washington were looking for Hispanic men to shoot. There is no evidence that he led them specifically to these victims. Also the statements of pardon my language, blow this bitch, that witnesses heard, no one was able to say who said that. In fact, Battle was arrested 15 minutes after the crime and when he spoke to police said that he heard that statement from somebody else. At that time he didn't know other witnesses had told police or would testify that they heard that statement. And so it was not a self-serving statement just to put it on someone else. He just told officers what he knew and tried to help them. Additionally, the state's arguments that he didn't want Washington and Jackson to get jumped or to be outnumbered go to that his intent was an altercation that he thought he was backing up. Also that he was holding a bottle goes to just he thought this was going to be an altercation. You don't bring a bottle to what you know is going to be a gunfight. He did not have the same intent going into this. Watching the video, Battle is not the one leading. He stands away from Jackson. Jackson is not looking at him when he points the bottle. And Jackson walks up and opens fire immediately. He did not need any provocation from anyone. Though Battle did stand there while the shooting happened. He left within a second afterwards. He fled without Jackson because he was not a part of this. He did not know what was going to happen. And due to this and the arguments in this, the issues in this argument, and those in my brief, we would ask that this court remand for a new trial or vacate the conviction. Thank you. Any questions, Cynthia? No, none for me. Thanks, Justice. All right. Thank you both. You both were very articulate, enjoyable to listen to, and it was kind of interesting. It's different than we normally get. So it was kind of a fun case. So thank you both for your in-depth work and we'll let you know as soon as we hear from our third member.